UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CR-289-1
NO. 5:24-CR-289-2
NO. 5:24-CR-289-3
NO. 5:24-CR-289-4
NO. 5:24-CR-289-5
NO. 5:24-CR-289-6
NO. 5:24-CR-289-7
NO. 5:24-CR-289-8
NO. 5:24-CR-289-9
NO. 5:24-CR-289-10
NO. 5:24-CR-289-11
NO. 5:24-CR-289-12
NO. 5:24-CR-289-13
NO. 5:24-CR-289-14
NO. 5:24-CR-289-15
NO. 5:24-CR-289-16

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | (UNDER SEAL) |
| VIDAUL RASHAAD REED, | ) | |
| a/k/a "Hootie," | ) | |
| ANTHONY EDWARD CHEEVER, | ) | |
| a/k/a "Rowdy," | ) | |
| DAVID WILLIAM STEPHENS, | ) | |
| a/k/a "007," | ) | |
| MARTINUS JERMAINE STARKS, | ) | |
| a/k/a "Tee," | ) | |
| TYLER SCOTT GRISSOM, | ) | |
| a/k/a "Snow," | ) | |
| CHRISTOPHER DYLAN MANOR, | ) | |
| ROBERT SCOTT BROWN, | ) | |
| FRED JOSEPH PROSPERI, | ) | |
| a/k/a "Freddy," "Snow Boy," | ) | |
| JASON LEE HATHAWAY, | ) | |
| WILLIAM SCOTT GARDNER, | ) | |
| a/k/a "Big Will," | ) | |
| TERRY LEWIS AKINS, JR., | ) | |

J.R. NEVAREZ DARR, )
DARRELL DEWAYNE STRICKLAND, JR., )
WILLIAM FRANKLIN BEASLEY, )
DAVID LEE WOODALL, )
JONATHAN MICHAEL ROBARGE, )
    Defendants. )
     )

The Grand Jury charges that:

## GENERAL ALLEGATIONS

1.    At all times relevant to this Indictment, in the Eastern District of North Carolina and elsewhere, the defendants, VIDAUL RASHAAD REED, a/k/a "Hootie," ANTHONY EDWARD CHEEVER, a/k/a "Rowdy," DAVID WILLIAMS STEPHENS, a/k/a "007," MARTINUS JERMAINE STARKS, a/k/a "Tee," TYLER SCOTT GRISSOM, a/k/a "Snow," CHRISTOPHER DYLAN MANOR, ROBERT SCOTT BROWN, FRED JOSEPH PROSPERI, a/k/a "Freddy" and "Snow Boy," JASON LEE HATHAWAY, WILLIAM SCOTT GARDNER, a/k/a "Big Will," TERRY LEWIS AKINS, JR., J.R. NEVAREZ DARR, DARRELL DEWAYNE STRICKLAND, JR., WILLIAM FRANKLIN BEASLEY, DAVID LEE WOODALL, and JONATHAN MICHAEL ROBARGE were members and/or associates of the violent outlaw motorcycle group, the Hells Angels Motorcycle Club (the "HAMC" or "the HAMC Enterprise").

## Background and Structure of the HAMC

2.    The HAMC was and is a violent outlaw motorcycle gang that operated in the Eastern District of North Carolina and elsewhere. The HAMC is an

2

international outlaw motorcycle club that originated in Fontana, California, and spread to other parts of the United States.

3. The HAMC members refer to themselves as an "outlaw" motorcycle club and refer to themselves as "1%ers." This is a reference to a comment by the American Motorcyclist Association that 99% of motorcyclists were law-abiding, implying the remaining one percent were not.

4. The HAMC has local chapters, or charters, throughout the United States and in more than two dozen countries throughout the world. They are a highly structured, global organization, incorporated in the United States as the Hells Angels Motorcycle Corporation, with bylaws and officers on the local, regional, national, and international levels. The HAMC operates under a hierarchical structure, managed by a Board of Directors who are elected by the HAMC members.

5. There are multiple stages to becoming a "full patch" member of the HAMC. The lowest status of membership is a "hangaround," who is invited to some club events to meet additional members and is entirely subservient to members at higher status levels. If the hangaround is sponsored by a "full patch" member, they can attain "prospect" status. A prospect, or prospective member, must perform duties for the HAMC and may participate in slightly more activities and events than a hangaround. To obtain membership in the HAMC and obtain "full patch" status, individuals are required to prospect for a minimum of one year.

6. After receiving unanimous support of the charter, a prospect can be accepted as a "full patch" member. The term "full patch" refers to the complete four-

3

piece crest worn by full members of the HAMC Enterprise, which includes (1) the Death Head logo, (2) a "Hells Angels" top emblem, (3) a bottom emblem denoting the location of the charter as well as the state they control, and (4) a rectangular "MC" patch below the wing of the Death Head. In the United States, the HAMC prospects only wear an emblem with the geographic territory and the charter they are assigned.

7.     The HAMC has a set of written rules called the HAMC World Rules. The HAMC World Rules are outlined and distributed to each HAMC charter worldwide. The members of the club are answerable to their respective country and region's current laws and rules.

8.     The HAMC uses certain symbols to distinguish and promote the HAMC Enterprise, including the Death Head logo. The HAMC members display the Death Head logo on patches, belt buckles, belts, t-shirts, and tattoos. No charter, HAMC member, or HAMC prospect is allowed to market anything bearing the names Hells Angels or Death Head logo without authorization.

9.     The HAMC members show their association with the HAMC Enterprise by obtaining tattoos and wearing leather vests, or "cuts," that reflect insignia or symbols associated with the HAMC.

10.     The HAMC members utilize the colors red and white to show their association with the HAMC Enterprise; demonstrate their territorial control over a state, city, country, or region; and intimidate members of rival and subservient motorcycle gangs.

4

11.     Members and associates of the HAMC commonly commit physical assaults, including murder, threats to injure, and intimidation to compel victims and eyewitnesses to remain silent or recant original accounts made to law enforcement. The HAMC members and associates threaten and intimidate witnesses to criminal conduct.

12.     Each HAMC charter maintains a clubhouse, where it conducts regular meetings for members, called "church." The HAMC adopts strict security measures at its clubhouses to prevent and hamper investigation by law enforcement or intrusion by rival motorcycle clubs. Cameras are strategically placed to monitor day-to-day foot traffic or intrusion by unwanted guests, adversaries, or law enforcement. Clubhouse doors and windows are often fortified. Firearms and other deadly weapons, including knives, ball peen hammers, and brass knuckles, often are easily accessible.

13.     The Fayetteville Charter is a subset of the HAMC that operates throughout the Eastern District of North Carolina. The Fayetteville Charter operates a clubhouse in Fayetteville, North Carolina and is led by a chapter president.

14.     The HAMC has a long-standing rivalry with the Pagan's Motorcycle Club (the "PMC"). The Fayetteville Charter and other HAMC subsets in the Eastern District of North Carolina and elsewhere have a standing "green light" order under which members and associates of the HAMC are required to attack, injure, and kill any PMC members they encounter. Failure to comply with the "green light" order can result in retribution, including assault and loss of status in the HAMC Enterprise.

5

15.     A member, prospect, and hangaround of a charter or bonafide support club may be called upon at any time to assist other members of that charter in its criminal activities.

16.     The HAMC has numerous support clubs. The HAMC support clubs perform unglamorous work, to include violent acts, for the HAMC. The Red Devils Motorcycle Club (the "RDMC") serves as the primary support club for the HAMC worldwide and operates via local chapters that associate with corresponding HAMC Charters. Members and associates of the RDMC are subservient to the HAMC and provide support by increasing the HAMC's influence, acting as a source of recruitment, and carrying out violent acts to further the HAMC's interests. The RDMC members who seek membership in the HAMC can increase their status by facilitating the HAMC's criminal activities, including committing murder, assault, and other acts of violence. In return, the RDMC's association with the HAMC provides the RDMC members and associates with protection due to the HAMC's reputation for violence.

17.     Like the HAMC, potential RDMC members are required to prospect for at least a year with the RDMC before becoming RDMC members. The RDMC serves as a feeder club for the HAMC, and the RDMC members are not permitted to align with any other outlaw motorcycle club other than the HAMC.

18.     The RDMC members use the colors red and white and certain symbols to show their association with the RDMC, as well as their relationship with the

6

HAMC. The RDMC members are bequeathed with a patch to show their membership in the RDMC.

19.     The Cumberland County Chapter of the RDMC serves as the primary support club chapter for the Fayetteville Charter of the HAMC. The RDMC members and associates are required to adhere to any orders from the HAMC.

20.     The HAMC, including its leaders, members, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The HAMC Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## Purposes of the Enterprise

21.     The purposes of the HAMC Enterprise include, but are not limited to, the following:

a.     Preserving, protecting and expanding the power, territory, reputation, and proceeds of the HAMC Enterprise through the use of intimidation, threats of violence, and violence, including, but not limited to murder, attempted murder, conspiracy to murder, robbery, and assaults;

b.     Promoting and enhancing the HAMC Enterprise and its members' and associates' activities, including, but not limited to, murder, attempted murder, conspiracy to murder, assaults, and other criminal activities;

7

c.     Keeping rival motorcycle gang members and victims of, and potential informants and witnesses to, the HAMC Enterprise's illegal activities in fear of the HAMC Enterprise through violence and threats of violence;

d.     Providing assistance and support to gang leaders, members, and associates who commit crimes on behalf of the HAMC Enterprise; and

e.     Hindering, obstructing, and preventing law enforcement officers from identifying participants in the HAMC Enterprise's criminal activity, apprehending the perpetrators of those crimes, and successfully prosecuting and punishing the offenders.

## Methods and Means of the Enterprise

22.     Among the methods and means by which the defendants and other members and associates of the HAMC conducted and participated in the conduct of the affairs of the HAMC Enterprise were the following:

a.     The leaders of the HAMC Enterprise directed, sanctioned, approved, and permitted other members and associates of the enterprise to carry out acts in furtherance of the HAMC Enterprise.

b.     Members and associates of the HAMC Enterprise committed, conspired to commit, and threatened to commit acts of violence, including acts involving murder, attempted murder, conspiracy to murder, robbery, assault, and intimidation to protect the HAMC Enterprise's power and territory.

c.     To enforce discipline and the rules of the HAMC Enterprise, members and associates of the HAMC Enterprise suspected of violating the

8

HAMC Enterprise rules were subject to "violations," which included murder, attempted murder, conspiracy to murder, physical assault and threats, and the imposition of fines.

d.　　For protection and to carry out criminal conduct, the HAMC Enterprise members and associates acquired, carried, and used firearms, and other weapons. The HAMC Enterprise members and associates also borrowed and transferred firearms from one another.

e.　　Members and associates of the HAMC Enterprise used gang-related terminology, symbols, phrases, colors and clothing and gestures to demonstrate affiliation with the gang.

f.　　Members and associates of the HAMC Enterprise used instrumentalities of interstate commerce including telephones, internet-based applications, and social media accounts to communicate about gang matters. Members and associates of the HAMC Enterprise often talked in code and used encrypted messaging platforms when communicating over the telephone and/or in writing.

g.　　Members and associates of the HAMC Enterprise were forbidden from cooperating with law enforcement and legal paperwork of those associated with the HAMC Enterprise would be reviewed for signs of cooperation.

23.　　The HAMC, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1)

9

and 1961(1), namely, multiple acts and threats involving murder in violation of North Carolina General Statutes §§ 14-17, 14-5.2, 14-2.4, and 14-2.5, and acts involving robbery in violation of North Carolina General Statutes §§ 14-87, 14-87.1, 14-5.2, 14-2.4, and 14-2.5.

## COUNT ONE

24.     Paragraphs One through Twenty-Three of this Indictment are incorporated and realleged as if fully set forth herein.

25.     On or about January 1, 2023, in the Eastern District of North Carolina, and elsewhere, the defendants, VIDAUL RASHAAD REED, a/k/a "Hootie," ANTHONY EDWARD CHEEVER, a/k/a "Rowdy," DAVID WILLIAM STEPHENS, a/k/a "007," MARTINUS JERMAINE STARKS, a/k/a "Tee," and TYLER SCOTT GRISSOM, a/k/a "Snow," and others known and unknown to the Grand Jury, while aiding and abetting each other, for the purpose of gaining entrance to and maintaining and increasing position in HAMC, an Enterprise engaged in racketeering activity, did knowingly and intentionally murder J.P., in violation of North Carolina General Statutes §§ 14-17(a) and 14-5.2.

All in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT TWO

26.     On or about January 1, 2023, in the Eastern District of North Carolina and elsewhere, the defendants, VIDAUL RASHAAD REED, a/k/a "Hootie," ANTHONY EDWARD CHEEVER, a/k/a "Rowdy," DAVID WILLIAM STEPHENS,

10

Case 5:24-cr-00289-M-KS   Document 5   Filed 10/03/24   Page 10 of 19

a/k/a "007," MARTINUS JERMAINE STARKS, a/k/a "Tee," and TYLER SCOTT GRISSOM, a/k/a "Snow," aiding and abetting each other and others known and unknown to the Grand Jury, did knowingly and unlawfully use and carry firearms during and in relation to a crime of violence for which each defendant may be prosecuted in a court of the United States, namely, Murder of J.P. in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2, as set forth and charged in Count One of this Indictment, and in furtherance of such crime of violence did possess one or more firearms, wherein one or more firearms was brandished and discharged, and in the course of said offense did cause the death of J.P. through the use of firearms, which killing constituted murder as defined by Title 18, United States Code, Section 1111.

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(j)(1), and 2.

## COUNT THREE

27.    On or about January 1, 2023, in the Eastern District of North Carolina and elsewhere, the defendants, CHRISTOPHER DYLAN MANOR and ROBERT SCOTT BROWN, knowing that an offense against the United States had been committed, that is, Murder in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2, and Title 18, United States Code, Sections 924(c)(1)(A)(iii), 924(j)(1), and (2), as set forth and charged in Counts One and Two of this Indictment, respectively, unlawfully and knowingly received, relieved,

11

comforted, and assisted the offenders in order to hinder and prevent the offenders' apprehension, trial, and punishment.

All in violation of Title 18, United States Code, Section 3.

## COUNT FOUR

28.     Paragraphs One through Twenty-Three of this Indictment are incorporated and realleged as if fully set forth herein.

29.     On or about July 22, 2023, in the Eastern District of North Carolina, the defendant, JASON LEE HATHAWAY, for the purpose of gaining entrance to and maintaining and increasing position in the HAMC, an Enterprise engaged in racketeering activity, unlawfully and knowingly attempted to murder J.W., in violation of North Carolina General Statutes §§ 14-17 and 14-2.5.

All in violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT FIVE

30.     Paragraphs One through Twenty-Three of this Indictment are incorporated and realleged as if fully set forth herein.

31.     On or about July 22, 2023, in the Eastern District of North Carolina, the defendant, JASON LEE HATHAWAY, for the purpose of gaining entrance to and maintaining     and     increasing     position     in     the     HAMC,     an Enterprise engaged in racketeering activity, did knowingly and intentionally assault J.W. with a dangerous weapon, in violation of North Carolina General Statutes § 14-22(c)(1).

All in violation of Title 18, United States Code, Section 1959(a)(3).

12

## COUNT SIX

32.    Paragraphs One through Twenty-Three of this Indictment are incorporated and realleged as if fully set forth herein.

33.    On or about July 22, 2023, in the Eastern District of North Carolina, the defendants, FRED JOSEPH PROSPERI, a/k/a "Freddy" and "Snow Boy," WILLIAM SCOTT GARDNER, a/k/a "Big Will," TERRY LEWIS AKINS, JR., J.R. NEVAREZ DARR, DARRELL DEWAYNE STRICKLAND, JR., WILLIAM FRANKLIN BEASLEY, and DAVID LEE WOODALL, aiding and abetting each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the HAMC, an Enterprise engaged in racketeering activity, did attempt to murder J.W., J.A., and J.C. in violation of North Carolina General Statutes §§ 14-17 and 14-2.5.

All in violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## COUNT SEVEN

34.    Paragraphs One through Twenty-Three of this Indictment are incorporated and realleged as if fully set forth herein.

35.    On or about July 22, 2023, in the Eastern District of North Carolina, the defendants, FRED JOSEPH PROSPERI, a/k/a "Freddy" and "Snow Boy," WILLIAM SCOTT GARDNER, a/k/a "Big Will," TERRY LEWIS AKINS, JR., J.R. NEVAREZ DARR, DARRELL DEWAYNE STRICKLAND, JR., WILLIAM FRANKLIN BEASLEY, and DAVID LEE WOODALL, aiding and abetting each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and

13

maintaining and increasing position in the HAMC, an Enterprise engaged in racketeering activity, did knowingly and intentionally assault J.W., J.A., and J.C. with dangerous weapons, in violation of North Carolina General Statutes §§ 14-33(c)(1) and 14-5.2.

All in violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT EIGHT

36.    On or about July 26, 2024, in the Eastern District of North Carolina, the defendant, JONATHAN MICHAEL ROBARGE, did intentionally harass another person, Witness 1, and did thereby attempt to dissuade Witness 1 from assisting a criminal prosecution to be sought and instituted.

All in violation of Title 18, United States Code, Section 1512(d)(4).

14

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any offense charged herein constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)), or a conspiracy to commit such offense, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as made applicable by 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

Upon conviction of any violation of the Gun Control Act, the National Firearms Act, or any other offense charged herein that involved or was perpetrated in whole or in part by the use of firearms or ammunition, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 924(d) and/or 26 U.S.C. § 5872, as made applicable by 28 U.S.C. § 2461(c), any and all firearms and ammunition that were involved in or used in a knowing or willful commission of the offense, or that were intended to be used in any offense identified in 18 U.S.C. § 924(d)(3), or, pursuant to 18 U.S.C. § 3665, that were found in the possession or under the immediate control of the defendant at the time of arrest.

The forfeitable property includes, but is not limited to, the following:

a) One Taurus PT 1911 .45 caliber firearm, serial number NFU73130, seized on January 5, 2023, from Vidaul Reed at 1469 Mingary Avenue, Fayetteville, North Carolina, 28306 and any and all associated ammunition.

15

b) One Glock 19 9 mm caliber firearm, serial number ZUM846, seized on January 5, 2023, from Vidaul Reed at 1469 Mingary Avenue, Fayetteville, North Carolina, 28306 and any and all associated ammunition.

c) One Glock 45 9 mm caliber firearm, serial number BWME179, seized on January 5, 2023, from Vidaul Reed at 1469 Mingary Avenue, Fayetteville, North Carolina 28306 and any and all associated ammunition.

d) One Taurus G2C 9 mm caliber firearm, serial number THU93156, seized on January 5, 2023, from Vidaul Reed at 1469 Mingary Avenue, Fayetteville, North Carolina 28306 and any and all associated ammunition.

e) One Kel-Tec P3AT .380 caliber firearm, serial number L7B87, seized on January 5, 2023, from Anthony Cheever at 822 Deer Harbor Drive, Garner, North Carolina 27529 and any and all associated ammunition.

f) One Taurus ARMAS revolver .380 caliber firearm, serial number MC535945, seized on January 5, 2023, from Anthony Cheever at 822 Deer Harbor Drive, Garner, North Carolina 27529 and any and all associated ammunition.

g) One CZ, CZP20C 9 mm firearm, serial number C155218, seized on January 5, 2023, from Anthony Cheever at 822 Deer Harbor Drive, Garner, North Carolina 27529 and any and all associated ammunition.

h) One Taurus PT111 Millennium 9 mm, serial number TJS06312, seized on January 5, 2023, from Anthony Cheever at 822 Deer Harbor Drive, Garner, North Carolina 27529 and any and all associated ammunition.

i) One Smith & Wesson M&P Shield, 9 mm firearm, serial number JNF9806, seized on January 5, 2023, from Tyler Grissom, at 1932 Henry Street, Red Devils Motorcycle Club Clubhouse, Fayetteville, North Carolina 28306, and any and all associated ammunition.

j) One Sig Sauer 1911 C3, .45 caliber firearm, serial number 54B021102, seized on January 5, 2023, from Martinus Starks, at 4826 Laurelwood Place, Fayetteville, North Carolina 28306, and any and all associated ammunition.

k) One Taurus G2C, 9 mm caliber firearm, serial number TLM81355, seized on January 5, 2023, from Martinus Starks, at 4826 Laurelwood Place, Fayetteville, North Carolina 28306, and any and all associated ammunition.

l) One Glock 23, .40 caliber firearm, serial number BWTP446, seized on January 5, 2023, from David Stephens, at 437 Wapiti Drive, Spring Lake, North Carolina 28390, and any and all associated ammunition.

m) One Taurus G3C, 9 mm caliber firearm, serial number 1KAZ5561, seized on January 5, 2023, from David Stephens, at 437 Wapiti Drive, Spring Lake, North Carolina 28390, and any and all associated ammunition.

n) One Taurus Magnum, .357 revolver, serial number ABL146720, seized on July 28, 2023, from Elinda Hooks, at 211 Cordelia Court, Fayetteville, North Carolina 28306, and any and all associated ammunition.

o) One Anderson Manufacturing AM-15 AR pistol with brace, 5.56 caliber,

17

serial number 21022396, seized on September 28, 2023, from Elinda Hooks, at 211 Cordelia Court, Fayetteville, North Carolina 28306, and any and all associated ammunition.

p) One SAR USA, model Sar9, 9 mm pistol, serial number T1102-20BV04657, seized on July 25, 2023, from David Woodall, at Dairy Queen located at 4001 Pembroke Lane, Wade, North Carolina 28395, and any and all associated ammunition.

q) One Taurus, .357 magnum firearm, serial number LO64048, seized on July 25, 2023, from David Woodall, at Dairy Queen located at 4001 Pembroke Lane, Wade, North Carolina, 28395, and any and all associated ammunition.

r) One Glock 22, .40 caliber firearm, serial number NER292, seized on July 25, 2023, from David Woodall, at Dairy Queen located at 4001 Pembroke Lane, Wade, North Carolina 28395, and any and all associated ammunition.

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

18

to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property described above.

**REDACTED VERSION**

Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

DATED: _10/01/2024_

MICHAEL F. EASLEY, JR.
United States Attorney

BY:    KELLY L. SANDLING
Assistant United States Attorney
Criminal Division

BY:    ROBERT J. DODSON
Assistant United States Attorney
Criminal Division

Kelly Pearson
Deputy Chief
Violent Crime and Racketeering
Section
U.S. Department of Justice
Washington, DC 20530

Alyssa Levey-Weinstein
Trial Attorney
Violent Crime and Racketeering
Section
U.S. Department of Justice
Washington, DC 20530

19